[Crim. No. 3865. In Bank.—January 31, 1936.]

THE PEOPLE, Respondent, v. DOUGLAS L. SKELLY et al., Appellants.

Harold Judson, Thos. P. Cruce, L. B. Randall and Randall & Bartlett for Appellants.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

CURTIS, J.—Appellants were found guilty after a trial by court, without a jury, of seventeen counts of grand theft, the total amount of the thefts charged aggregating about $39,000. The two appellants are brothers who, at the time of the alleged offenses, were officers of a corporation known as ''Douglas L. Skelly Company, Inc.'', which company had been licensed by the corporation department of the state of California to do business as a stock broker. Douglas L. Skelly owned practically the entire stock of the company and was undoubtedly the one who had the controlling direction of the

company.. Robert B. Skelly, his younger brother, owned one share of stock in the company, and was a director, the treasurer, and trading manager of the company. This appeal is from the order denying the motion for a new trial and from the judgment of conviction.

The conviction of the appellants is predicated primarily, and almost solely, upon the testimony of the complaining witness, Charles T. Davis. This testimony is to the effect that on March 14, 1932, he deposited with the Douglas L. Skelly Company, Inc., hereinafter referred to as the "Skelly Company", securities consisting of stocks and bonds of the value of $190,000. He testified that he had been unable to secure a loan from a bank and that he approached Douglas L.. Skelly with the proposition that Skelly Company should procure the loan through their connections with a bank using his securities as collateral security for a loan up to $125,000, and that Douglas L. Skelly accepted the proposal, and through this arrangement he procured immediately from Skelly Company an advance of $65,000. He testified that he gave to Skelly Company three demand notes aggregating $65,000 at 6 per cent interest. He emphatically declared that it was his understanding that his securities were to be pledged with the Security First National Bank of Los Angeles, and that the amount advanced to him was advanced solely as a loan, and emphatically denied that in making this arrangement with Skelly Company, through Douglas L. Skelly, he had opened any margin account with said company. In January, 1933, so he testified, he discovered for the first time that his securities had not been deposited with the Security First National Bank, but had been rehypothecated by Skelly Company with Russell Miller & Company, stock brokers, with whom Skelly Company maintained a correspondent margin account, and that certain securities, covered by the indictment, had been sold by said Russell Miller & Company without his knowledge or consent by order of Skelly Company, and the proceeds thereof credited to Skelly Company's account with Russell Miller & Company. It also appears that some of his securities had been sold through another firm, and that the money had never been credited to his account.

It is at once apparent that if this version of the transaction between the parties be accepted as true, a conviction based

thereon, must necessarily be upheld. Appellants, however, insist that the testimony of the complaining witness is so inherently improbable as to be wholly unworthy of credence and to amount to an insufficiency of the evidence. Appellants insist that the facts of the transactions, despite Davis' statement that no margin account had been opened by him, compel the conclusion that a margin account was in fact opened by him, and argue that if the margin account had been opened, the relation of creditor and debtor arose between Davis and Skelly Company and that although the stock broker firm became indebted to the complaining witness for the value of his securities, and civilly liable to him for illegal conversion, the officers were not guilty of embezzlement or of any other crime.

An analysis of the evidence shows that although there is in the record considerable evidence supporting appellants' version of the transactions involved, nevertheless, there are on the other hand facts and circumstances which corroborate the testimony of Davis and support his account of the transactions between the parties and his understanding of the relation thereby created. One of these circumstances is the fact that no margin card was signed by Davis. Although it is not absolutely imperative that a margin card be signed by the customer in the opening of a margin account as such an account can be opened without the signing of such card, which constitutes a written agreement between the parties and a consent by the customer that the broker may handle his funds and securities in a manner which would render him criminally liable in the absence of such agreement, nevertheless, since such agreement immeasurably extends the privileges of a stock broker in his dealings with his customer's property, it is almost the universal practice of stock broker firms to require the signing of such a card as a prerequisite to doing business with such a firm. The transaction here involved wherein the stock broker firm immediately advanced to the customer $65,000, was not the ordinary stock broker-customer transaction of buying and selling securities, and it would seem that in view of the unusual character of this transaction, and of the amount involved therein, the stock broker firm would have been most careful to secure the signature of the customer upon the margin card if the firm in fact intended that a margin account be opened. The other circumstance which

strongly supports Davis' testimony is the fact that at the top of statements mailed to Davis monthly, instead of the word "long", which indicates that the broker is holding certain securities of a customer on a margin account, the bookkeeper of Skelly Company, upon instructions from Douglas L. Skelly, had inserted at the request of Davis the following statement preceding the list of securities deposited by him with Skelly Company: "We hold the following securities which are your property." This statement is susceptible of a construction which indicates that the stock broker firm was holding Davis' securities otherwise than in a margin account. Whatever construction is to be placed upon this statement, the fact that Douglas L. Skelly made the change from the word "long" to the above quoted statement, in view of the fact that the word "long" meant that the customer's securities were being held in a margin account, may well indicate that Douglas L. Skelly intended at least to convey the idea to Davis that the securities were not held on a margin account. It further appears that these monthly statements were mailed to Davis, containing the statement, "We hold the following securities which are your property", after a portion of said securities had been disposed of by the company. This statement was therefore, of course, a complete falsehood. In view of these admitted circumstances which were undoubtedly a departure from the ordinary method of handling a margin account, we cannot say that Davis' testimony to the effect that a transaction different from the ordinary transaction between broker and customer had been entered into by the parties was inherently improbable. This being so, and the trial court having in effect made its implied finding of fact in favor of the prosecution, this court will not disturb the judgment, at least so far as the defendant, Douglas L. Skelly, is concerned.

In addition to urging the improbability of the testimony of the complaining witness, the defendant R. B. Skelly earnestly insists that evidence indispensable in proof of his guilt is lacking in the record. He points to the fact that although he was a director and treasurer of the company, he was the owner of only one share of stock and was in fact only an employee of his brother, Douglas L. Skelly, the active manager of the business. He contends that if it was not for the fact that he

was the brother of Douglas L. Skelly he would have escaped prosecution just as the other directors escaped prosecution. Unquestionably the record does show that Douglas L. Skelly was the responsible head of the firm, conducted all the negotiations with Davis upon the deposit of Davis' securities and was almost in effect the *alter ego* of the corporation. We have carefully examined the record and are of the opinion that, although the record shows R. B. Skelly was in charge of the trading department of Skelly Company, and that the sales made by Skelly Company with the Russell Miller & Company were made upon his order, nevertheless there is an entire lack of evidence to prove that he, in fact, was cognizant of the original deal made by his brother, Douglas L. Skelly, with Davis, and was therefore aware that his activity in connection with said securities was criminal or that the securities were pledged or otherwise disposed of in violation of the agreement between his brother and Davis. We are of the opinion that there is a link missing in the chain of proof against this defendant, and that the judgment of conviction as to him is therefore erroneous and that he is entitled to a reversal of that judgment.

Application was made to this court by appellants for permission to introduce additional evidence. The application was supported by affidavits of two former employees of the complaining witness, Davis, to the effect that in the books kept by them for him no account with Skelly Company appeared as a loan transaction. This evidence is merely cumulative of other evidence produced at the trial of the case and in our opinion, accepting such affidavits as true, such evidence would not affect in any way our decision herein.

The judgment and the order denying the motion for a new trial as to Douglas L. Skelly are affirmed. As to the defendant, R. B. Skelly, the judgment and order denying the motion for a new trial are reversed and the cause remanded for a new trial.

Shenk, J., Thompson, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied. Langdon, J., voted for a rehearing.